## IN THE UNITED STATES DISTRICT COURT FOR THE

## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CR-05-88-T |
| | ) | |
| DESHANE LAVELLE SHELTON, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

The Court has before it Defendant's "Motion to Suppress Evidence Obtained as a Result of an Illegal Arrest, Search and Seizure," filed May 23, 2005, and the "Government's Response Brief to Defendant's Motion to Suppress Evidence Obtained as a Result of an Illegal Arrest, Search and Seizure," filed June 2, 2005. An evidentiary hearing was held on June 6, 2005.

The issue raised in Defendant's motion is whether he was under arrest at the time, on March 27, 2005, when the police officers' handcuffed him, patted him down and found, in his right front jacket pocket, a .380 semi-automatic pistol loaded with nine rounds ammunition.[1] Defendant contends that he was arrested because the police officers physically restrained him by placing him in handcuffs. Defendant further contends that the arrest was illegal because it was not supported by "a reasonable and articulable suspicion" that he was engaged in criminal activity.

---

[1] *It was not disputed for purposes of this hearing that Defendant has been previously convicted of a felony.*

In response, the government argues that Defendant was not under arrest when he was placed in handcuffs. Rather, the Government argues, the case involves a Terry[2] investigative detention. In support of its position, the government cited Illinois v. Wardlow, 528 U.S. 119 (2000).

In this case, the testimony of Sgt. Szymanski at the evidentiary hearing revealed that on March 27, 2005, the involved officers[3] received information from a reliable confidential informant that a black male was selling drugs at a dwelling located at 1714 N.W. 12th Street, Oklahoma City, Oklahoma. The officers were aware that the general area surrounding this dwelling was a high crime area.[4]

When the officers arrived at the dwelling, they spoke to two individuals who were on the front porch. Those individuals, known users of crack-cocaine, told the officers that the drug activity may be occurring behind the dwelling. Officer Saxon and Sgt. Szymanski started to the rear of the dwelling to investigate. As they turned the corner, Sgt. Szymanski saw and recognized Defendant.[5] When Defendant saw the police officers, he paused or froze and then began walking quickly away from the officers. Sgt. Szymanski testified that Defendant kept his right hand in his jacket pocket and clamped his right arm tightly to his side as if something heavy was in his jacket pocket. Defendant then looked back at the officers and began to run away from them. Prior to this time, the officers had not spoken to Defendant.

---

[2] Terry v. Ohio, 392 U.S. 1 (1968).

[3] Officers Saxon, Ricketts and Szymanski of the Oklahoma City Police Department.

[4] Sgt. Szymanski testified that he had personally made at least 20 narcotics arrests in the square block area in one year. He also testified that numerous warrants had been served at the dwelling at 1714 N.W. 12th as well as houses very close thereto within two months.

[5] Sgt. Szymanski testified that he had contact with Defendant as recently as four months preceeding his arrest. Sgt. Szymanski further testified that he had looked at a photograph of Defendant the day before in connection with an investigation into an assault complaint.

Defendant initially ran away from the officers, but then circled back and attempted to gain entry into an apartment by knocking repeatedly on the door. The occupants of the apartment would not admit Defendant. At this point, Officer Saxon reached Defendant. Officer Saxon ordered Defendant to place his hands behind his back. Defendant would not do so. Therefore, Officer Saxon took Defendant's left arm and placed a handcuff on Defendant's left wrist. At this point, Sgt. Szymanski reached Defendant and joined Officer Saxon in ordering Defendant to remove his right hand from his jacket pocket. Defendant would not do so. Therefore, Sgt. Szymanski removed Defendant's right hand from his pocket and Officer Saxon placed Defendant's right arm in the handcuffs. When the officers patted down Defendant for their safety, they found a loaded[6] .380 handgun in the right front pocket. Defendant was arrested.

As announced at the evidentiary hearing, the Court finds that Petitioner's motion falls squarely within the parameters of Wardlow . In Wardlow, the Supreme Court stated:

> An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime. Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). But officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation. Accordingly, we have previously noted the fact that the stop occurred in a "high crime area" among the relevant contextual considerations in a Terry analysis. Adams v. Williams, 407 U.S. 143, 144, 147-148, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).
>
> In this case, moreover, it was not merely respondent's presence in an area of heavy narcotics trafficking that aroused the officers' suspicion, but his unprovoked flight upon noticing the police. Our cases have also recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. United States v. Brignoni--Ponce, 422 U.S. 873, 885 (1975); Florida v. Rodriguez, 469 U.S. 1, 6 (1984) (*per curiam*); United States v. Sokolow, [490 U.S. 1,] 8-9 [(1989)]. Headlong flight--wherever it occurs-- is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such.

---

[6] *The handgun was loaded with nine rounds in the magazine. There was no ammunition in the chamber.*

* * * *

[W]hen an officer, without reasonable suspicion or probable cause, approaches an individual, the individual has a right to ignore the police and go about his business. [Florida v. Royer, 460 U.S. 491,] 498 [(1983)]. And any "refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure." Florida v. Bostick, 501 U.S. 429, 437 (1991). But unprovoked flight is simply not a mere refusal to cooperate. Flight, by its very nature, is not "going about one's business"; in fact, it is just the opposite. Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning.

Respondent and *amici* also argue that there are innocent reasons for flight from police and that, therefore, flight is not necessarily indicative of ongoing criminal activity. This fact is undoubtedly true, but does not establish a violation of the Fourth Amendment. Even in Terry, the conduct justifying the stop was ambiguous and susceptible of an innocent explanation. The officer observed two individuals pacing back and forth in front of a store, peering into the window and periodically conferring. 392 U.S., at 5-6. All of this conduct was by itself lawful, but it also suggested that the individuals were casing the store for a planned robbery. Terry recognized that the officers could detain the individuals to resolve the ambiguity. Id., at 30.

In allowing such detentions, Terry accepts the risk that officers may stop innocent people. Indeed, the Fourth Amendment accepts that risk in connection with more drastic police action; persons arrested and detained on probable cause to believe they have committed a crime may turn out to be innocent. The Terry stop is a far more minimal intrusion, simply allowing the officer to briefly investigate further. If the officer does not learn facts rising to the level of probable cause, the individual must be allowed to go on his way.

Wardlow, 528 U.S. at 124-26 (parallel citations omitted).

In this case, the officers received reliable information regarding current drug activity occurring in a known high crime area. When they went to investigate, Defendant immediately attempted to flee the area. Defendant's attempt at fleeing also provoked the officers attention because he ran while keeping his right hand in his jacket pocket and keeping his arm clamped to his side. Defendant also attempted to quickly obtain entry in an apartment. Finally, Defendant refused to comply with the officers' directions that he remove his right hand from his jacket pocket. These factors, as in Wardlow, justified the officers' decision

to briefly detain Defendant in order to investigate further.  Id. at 125-26.  Accordingly, the Court finds no violation of the Fourth Amendment occurred.

CONCLUSION

For the foregoing reasons, the Court finds Defendant's "Motion to Suppress Evidence Obtained as  a Result of an Illegal Arrest, Search and Seizure" (Doc. No. 14) should be and is DENIED.

IT IS SO ORDERED this 6th day of June, 2005.

RALPH G. THOMPSON
UNITED STATES DISTRICT JUDGE